**CHRYSLER CORPORATION,**
Appellant in No. 76–1970

v.

**James A. SCHLESINGER, Secretary United States Department of Defense, Lt. Gen. Wallace Robinson, Director, Defense Supply Agency, Philip J. Davis, Director, Office of Federal Contract Compliance, and John Dunlop, Secretary United States Department of Labor, Appellants in No. 76–2238.**

**Nos. 76–1970 and 76–2238.**

United States Court of Appeals,
Third Circuit.

Argued June 13, 1977.

Decided Sept. 26, 1977.

As Amended Oct. 18, 1977.

Burt A. Braverman, Borovsky, Smetana, Ehrlich & Kronenberg, Alan Raywid, Washington, D. C., A. William Rolf, Detroit, Mich., for Chrysler Corp.; Michael Goldman, David Anderson, Potter, Anderson & Corroon, Wilmington, Del., of counsel.

Irving Jaffe, Acting Asst. Atty. Gen., Washington, D. C., W. Laird Stabler, Jr., U. S. Atty., Wilmington, Del., Paul Blankenstein, Morton Hollander, Attys., Appellate

Section, Civ. Div., Dept. of Justice, Washington, D. C., for federal appellants.

Victor H. Kramer, Charles E. Hill, Washington, D. C., for amicus.

Before VAN DUSEN, ADAMS and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff, Chrysler Corporation (Chrysler), appeals and defendants, federal government officials,[1] cross-appeal from a final judgment of the district court in an action for injunctive and declaratory relief aimed at preventing public disclosure of certain documents furnished by Chrysler to federal governmental agencies. The action was originally prompted by the decision of the defendants to honor a request by third parties[2] for public disclosure of the contested documents under the Freedom of Information Act (FOIA).[3] The district court, after a trial de novo, permanently enjoined public disclosure of certain portions of the contested documents, but denied the full range of injunctive relief requested by Chrysler, and also denied its request for a declaratory judgment that any future disclosure of similar documents would violate federal law. Chrysler appeals from the denial of the full declaratory and injunctive relief it requested. The federal government defendants in their cross-appeal originally contended (1) that Chrysler has no right to judicial review of an agency decision to disclose information requested by third parties under the FOIA; (2) that even if judicial review is available, the scope of review is limited to that defined in the Administrative Procedure Act[4] and does not include a trial de novo; and (3) that even if a trial de novo was proper, the district court erred in enjoining disclosure of portions of the contested documents. After the government's initial brief was filed in this court, the Solicitor General, in a petition for a writ of certiorari to review the decision of the Fourth Circuit in Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190 (4th Cir. 1976), cert. denied sub nom., Brown v. Westinghouse Elec. Corp., 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977), took the position that the exceptions to judicial review listed in 5 U.S.C. § 701 were inapplicable to so-called reverse FOIA actions[5] and that Pub.L.No. 94–574, 90 Stat. 2721, eliminated federal sovereign immunity as a bar to such review. We have been advised by the Justice Department that it is now the government's position that judicial review is available to parties objecting to disclosure of information under the FOIA, but that the Administrative Procedure Act controls our scope of review. Chrysler contended in the district court, and continues to urge here, that any disclosure of the contested documents was prohibited by several federal statutes to which specific reference will be made hereafter and by the due process clause of the fifth amendment. It maintained in the district court, and urges here, that a trial de novo was proper. Because we are in substantial agreement with the government's present position, we vacate the judgment of the district court and remand for further proceedings.

## I

## THE REGULATORY FRAMEWORK

Chrysler is a government contractor. As a condition of its doing business with the

---

1. James R. Schlesinger, Secretary, United States Department of Defense; Lt. Gen. Wallace Robinson, Director, Defense Supply Agency; Philip J. Davis, Director, Office of Federal Contract Compliance; and John Dunlop, Secretary, United States Department of Labor.

2. The parties who initially sought disclosure of Chrysler's documents neither intervened nor sought to participate in either the district court proceedings or the proceedings in this court.

3. 5 U.S.C. § 552 (1970 & Supp. V 1975), as amended by 5 U.S.C. § 552(b)(3) (Supp.1976), Pub.L. No. 89–554, 80 Stat. 383 (1966).

4. See 5 U.S.C. § 701 et seq.

5. See n.43 infra.

government it is required by an Executive Order,[6] and regulations promulgated thereunder by the Secretary of Labor,[7] to employ and treat all employees without regard to race, color, religion, sex, or national origin and to take affirmative action to eliminate discrimination in employment. In order to monitor compliance with these requirements, federal regulations require that every government contractor or subcontractor with fifty or more employees and a contract valued at $50,000 or more prepare and file an annual Employer Information Report, known as an EEO-1 report.[8] The EEO-1 report contains data on the number of women and minority group members employed. Contractors must also prepare and make available for inspection by appropriate federal agencies an Affirmative Action Program (AAP), providing detailed information on their past and projected employment of women and minority group members.[9] The AAP must contain a "utilization analysis" which describes the occupational levels of minority personnel employed by the contractor and "goals and time tables" by which opportunities for minority group members can be improved.[10] The failure of a contractor to comply with the Executive Order and regulations can result in the cancellation, termination, or suspension of existing contracts and debarment from future awards.[11]

The Secretary of Labor has delegated administrative responsibility for the enforcement of the Executive Order to the Director of the Office of Federal Contract Compliance (OFCC).[12] The Director of OFCC has designated various federal agencies as "compliance agencies." These compliance agencies have primary responsibility for assuring adherence to the Executive Order by contractors within certain geographic areas or industrial classifications.[13] In Chrysler's case the Defense Supply Agency of the Department of Defense (DSA) is the designated compliance agency. As part of its monitoring duties DSA has conducted "compliance reviews" of Chrysler's employment practices. These reviews consist of an examination of Chrysler's EEO-1 and AAP documents and on site inspections of its facilities. Compliance reviews result in a compliance review report (CRR), setting forth information supplied by the contractor, an analysis of his performance, and recommendations for sanctions or corrective measures.[14] DSA is also responsible for investigation and resolution of complaints of violations of the Executive Order[15] and must file a "complaint investigation report" (CIR) with OFCC within sixty days of the receipt of a complaint.[16]

■ Regulations promulgated by the Secretary of Labor contain rules providing for access by the public to information in the records of OFCC or its various compliance agencies.[17]

These regulations implement 5 U.S.C. § 552, the Freedom of Information Act and supplement the policy and regulations of the Department of Labor, 29 C.F.R. Part 70. It is the policy of the OFCC to disclose information to the public and to cooperate with other public agencies as well as private parties seeking to eliminate discrimination in employment. . . .

---

**6.** Executive Order 11246, 30 Fed.Reg. 12319 (1965), as amended by Executive Order 11375, 32 Fed.Reg. 14304 (1967), 3 C.F.R. 169–177 (1974).

**7.** 41 C.F.R. 60–1.1 *et seq.*

**8.** *Id.* at 60–1.7(a).

**9.** *Id.* at 60–1.40, 60–2.1.

**10.** *Id.* at 60–2.10.

**11.** *Id.* at 60–1.24.

**12.** *Id.* at 60–1.2. OFCC is the successor to the President's Committee on Equal Employment Opportunity. *See* 30 Fed.Reg. 12319, 13441.

**13.** *Id.* at 60–1.3(d), 60–1.6.

**14.** *Id.* at 60–60.9.

**15.** *Id.* at 60–1.24(b).

**16.** *Id.* at 60–1.24(d).

**17.** *Id.* at 60–40.1 *et seq.*

41 C.F.R. § 60–40.1. Consistent with the general policy of disclosure to aid in eliminating employment discrimination, the regulations provide:

Upon the request of any person for identifiable records obtained or generated pursuant to Executive Order 11246 (as amended) such records shall be made available for inspection and copying, notwithstanding the applicability of the exemption from mandatory disclosure set forth in 5 U.S.C. 552 subsection (b), if it is determined that the requested inspection or copying furthers the public interest and does not impede any of the functions of the OFCC or the Compliance Agencies except in the case of records disclosure of which is prohibited by law.

41 C.F.R. 60–40.2(a). Thus the regulations contain a blanket waiver of any authority the government might have to resist disclosure of any information which falls into one of the nine categories of information which are exempt from mandatory disclosure under the FOIA.[18] OFCC's regulations also provide that ". . . all contract compliance documents within the custody of the OFCC and the Compliance Agencies shall be disclosed upon request unless specifically prohibited by law or as limited elsewhere herein." 41 C.F.R. § 60–40.2(b). This blanket and mandatory disclosure requirement with respect to compliance documents is qualified in 41 C.F.R. § 60–40.3(a), which lists six categories of documents or parts thereof which "are exempt from mandatory disclosure by the OFCC and the compliance agencies, and should be withheld if it is determined that the requested information does not further the public interest and might impede the discharge of any of the functions of the OFCC or the Compliance Agencies."[19] Thus, even information with-

**18.** In enacting the FOIA Congress recognized that certain types of information, such as trade secrets and other confidential matters, should be exempt from the Act's mandatory public disclosure provisions. Consequently, the FOIA specifically exempts nine categories of information from mandatory disclosure.

This section does not apply to matters that are—

(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;

(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(9) geological and geophysical information and data, including maps, concerning wells. 5 U.S.C. § 552(b) (Supp.1976), amending 5 U.S.C. § 552(b) (1970 & Supp. V 1975).

**19.** 41 C.F.R. § 60–40.3(a) provides:

The following documents or parts thereof are exempt from mandatory disclosure by the OFCC and the compliance agencies, and should be withheld if it is determined that the requested inspection or copying does not further the public interest and might impede the discharge of any of the functions of the OFCC or the Compliance Agencies.

(1) Those portions of affirmative action plans such as goals and timetables which

in these six categories may be disclosed if OFCC determines that such disclosure is in the public interest and does not impede the discharge of the functions of OFCC or its compliance agencies. Finally, 41 C.F.R. § 60–40.4 [20] provides that EEO-1 reports shall be disclosed, even though the same forms are furnished to the Equal Employment Opportunity Commission (EEOC) [21] and EEOC is statutorily prohibited from disclosing EEO-1 reports in its possession.[22]

The contested documents in this case include Chrysler's EEO-1 reports and information which falls under three of the six exempt categories defined in 41 C.F.R. § 60–40.3(a),[23] namely: (1) those parts of Chrysler's AAP's which contain confidential commercial information indicating that a contractor plans major changes or shifts in his personnel requirements not yet publicly disclosed,[24] (2) those parts of Chrysler's AAP's which set forth staffing patterns and pay scales the release of which would injure the business or financial position of the contractor,[25] and (3) compliance investigation files and related documents to the extent that such information constitutes trade secrets and confidential commercial or financial information.[26]

would be confidential commercial or financial information because they indicate, and only to the extent that they indicate, that a contractor plans major shifts or changes in his personnel requirements and he has not made this information available to the public. A determination by an agency to withhold this type of information should be made only after receiving verification and a satisfactory explanation from the contractor that the information should be withheld.

(2) Those portions of affirmative action plans which constitute information on staffing patterns and pay scales but only to the extent that their release would injure the business or financial position of the contractor, would constitute a release of confidential financial information of an employee or would constitute an unwarranted invasion of the privacy of an employee.

(3) The names of individual complainants.

(4) The assignments to particular contractors of named compliance officers if such disclosure would subject the named compliance officers to undue harassment or would affect the efficient enforcement of the Executive order.

(5) Compliance investigation files including the standard compliance review report and related documents, during the course of the review to which they pertain or while enforcement action against the contractor is in progress or contemplated within a reasonable time. Therefore, these reports and related files shall not be disclosed only to the extent that information contained therein constitutes trade secrets and confidential commercial or financial information, interagency or intra-agency memoranda or letters which would not be available by law to a private party in litigation with the agency, personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, data which would be exempt from mandatory disclosure pursuant to the "infor-

mants privilege" or such information the disclosure of which is prohibited by statute.

(6) Copies of preemployment selection tests used by contractors.

20. 41 C.F.R. § 60–40.4 provides:

The Standard Form 100 (EEO-1) which is submitted by contractors to the OFCC, a compliance agency or a Joint Reporting Committee servicing both the OFCC and the EEOC shall be disclosed pending further instructions from the Director, OFCC. The statutory prohibition on disclosure set forth in Section 709(e) of the Civil Rights Act of 1964 is limited by the terms of that section to information obtained pursuant to the authority of title VII of that Act and its disclosure by employees of the EEOC.

21. Employers that are subject to the provisions of both Executive Order No. 11246 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., are required to file EEO-1 reports with both EEOC (see 29 C.F.R. § 1602.-7) and OFCC. To facilitate the collection of these reports EEOC and OFCC have established the Joint Reporting Committee (JRC), which receives and processes these reports and then distributes a copy of each EEO-1 report both to EEOC and OFCC.

22. Section 709(c) and (d) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(c) and (d), authorize EEOC to collect the data contained in the EEO-1 reports. Public disclosure of such data by EEOC is, however, prohibited by § 709(e), 42 U.S.C. § 2000e–8(e). See text at IV B 2 infra.

23. See n.19 supra.

24. 41 C.F.R. § 60–40.3(a)(1).

25. Id. at § 60–40.3(a)(2).

26. Id. at § 60–40.3(a)(5).

## II

### THE AGENCY PROCEEDINGS

On May 14, 1975, DSA notified Chrysler that third parties had requested under the FOIA the disclosure of the 1974 AAP of Chrysler's Newark, Delaware, assembly plant and the October 1974 CIR for that facility. Chrysler, on May 23, 1975, objected to the requested disclosure of the AAP, relying on the FOIA exemptions and OFCC disclosure regulations. It also requested a copy of the October 1974 CIR, which it had never seen, so that it could determine which parts of it should be treated as confidential. On May 30, 1975, DSA notified Chrysler that it had determined that the Newark AAP and CIR were subject to disclosure under the FOIA and OFCC disclosure rules, that Chrysler would not be furnished with a copy of the CIR prior to disclosure, and that both documents would be disclosed on June 4, 1975.

On July 1, 1975, DSA notified Chrysler that it had received a request under the FOIA for disclosure of the AAP and CRR for Chrysler's Hamtramck, Michigan, assembly plant. The July 1 notice indicated that under the recent amendments to the FOIA, Pub.L. No. 93–502, 5 U.S.C. § 552(a)(6)(A)(i), DSA was required to make a substantive decision on release of these documents within ten working days of receipt of the request and for that reason could not await the results of an appeal to OFCC under 41 C.F.R. § 60–60.4(d).[27] The DSA letter suggested that any comments Chrysler wished ·to make should be made promptly. Chrysler, by letters dated July 3 and July 11, 1975, objected to the disclosure of the documents relating to its Hamtramck plant, contending that both the AAP and CRR were exempt from disclosure under the FOIA and also that disclosure of certain information contained in the AAP, including EEO-1 data, was prohibited by 18 U.S.C. § 1905,[28] by § 709(e) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(e),[29] and by 44 U.S.C. § 3508.[30] Chrysler's letter also requested a copy of the Hamtramck CRR, which it had never seen. On July 18, 1975, DSA replied in part:

Full consideration has been given by this agency to your comments and objections. Nevertheless, a determination has been made to release both the Affirmative Action Plan and the Compliance Review Report to the requester, subject to the exceptions noted in the attached list for the reasons given therein. Your assertions of competitive harm were unsupported by any showing of the likelihood of such harm, and only in one context would we agree to the existence of such a likelihood without such a showing. This is reflected in the first ten exceptions on the attached list.

\* \* \* \* \* \*

This decision may be appealed to the Office of Federal Contract Compliance, However, during the conduct of a compliance review or while enforcement action against the contractor is in progress or contemplated within a reasonable time, all information obtained from a contractor under Subpart B except information disclosable under §§ 60–40.2 and 60–40.3 of this chapter is to be considered part of an investigatory file compiled for law enforcement purposes within the meaning of 5 U.S.C. 552(b)(7), and such information obtained from a contractor under Subpart B shall be treated as exempt from mandatory disclosure under the Freedom of Information Act during the compliance review.

**27.** 41 C.F.R. § 60–60.4(d) provides:

(d) *Public access to information.* Information obtained from a contractor under Subpart B will be subject to the public inspection and copying provisions of the Freedom of Information Act, 5 U.S.C. 552. Contractors should identify any information which they believe is not subject to disclosure under 5 U.S.C. 552, and should specify the reasons why such information is not disclosable. The Contract Compliance Officer will consider the contractors claim and make a determination, within 10 days, as to whether the material in question is exempt from disclosure. The contract compliance officer will inform the contractor of such a determination. The contractor may appeal that ruling to the Director of OFCC within 10 days. The Director of OFCC shall make a final determination within 10 days of the filing of the appeal.

**28.** *See* n.44 *infra.*

**29.** *See* n.22 *supra.*

**30.** *See* text at n.85 *infra.*

Washington, D. C., 20210, within 10 days, per 41 C.F.R. 60–60.4. However, due to the time constraints imposed by the recent amendments to the Act (Public Law 93–502), we cannot wait for the results of such an appeal. Accordingly, the subject documents, with deletions as noted in the attached list, will be released 5 working days after your receipt of this letter.

(JA–100). The July 18 letter also made clear DSA's position that neither 18 U.S.C. § 1905, 42 U.S.C. § 2000e–8(e), nor 44 U.S.C. § 3508 applied to any part of the AAP report, including the EEO–1 data.

## III

### THE DISTRICT COURT PROCEEDINGS

Faced with the DSA determination that the FOIA, as amended, prohibited the agency from withholding disclosure while Chrysler exhausted an administrative appeal to OFCC, Chrysler commenced this action in the district court on June 4, 1975. The initial complaint, which was filed before Chrysler learned of the request for disclosure of the Hamtramck documents, only sought injunctive relief against disclosure of the documents relating to the Newark, Delaware plant and a declaratory judgment that public disclosure of any similar documents was prohibited by law. The district court issued a temporary restraining order which prohibited disclosure of the Newark plant documents and which required the defendants to give Chrysler five days notice prior to the release of any similar documents relating to any of its other facilities. When DSA notified Chrysler of its intention to release the Hamtramck plant documents, it amended the complaint to refer to those documents and obtained from the district court temporary relief covering them as well.

Chrysler's amended complaint contained three counts. First, Chrysler charged that disclosure of any portion of its AAP's, EEO–1's, CIR's, or CRR's relating to any of its facilities would be unlawful under exemptions (b)(3)(4)(5) and (7) of the FOIA, 5 U.S.C. § 552(b)(3)(4)(5) and (7),[31] under 42 U.S.C. § 2000e–8(e),[32] under 18 U.S.C. § 1905,[33] and under 44 U.S.C. § 3508.[34] Second, it alleged that such disclosure would be an abuse of agency discretion since it would be contrary to 41 C.F.R. § 60–40.3(a)[35] and 29 C.F.R. §§ 70.21,[36] 70.-

**31.** *See* n.18 *supra.*

**32.** *See* n.22 *supra.*

**33.** *See* n.44 *infra.*

**34.** *See* text at n.85 *infra.*

**35.** *See* n.19 *supra.*

**36.** 29 C.F.R. § 70.21 provides:

(a) Pursuant to the provisions of 18 U.S.C. 1905, every officer and employee of the Department of Labor is prohibited from publishing, divulging, disclosing, or making known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with the Department or any agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. No officer or employee of the Department of Labor shall disclose records in violation of this provision of law.

(b) No records of the Department of Labor with respect to matters specifically required by statute to be kept secret shall be made available for inspection or copying under the provisions of this part. By virtue of the exclusionary language in 5 U.S.C. 552(b)(3) the disclosure requirements of the Freedom of Information Act do not apply to or authorize the disclosure of records with respect to any matters specifically exempted from disclosure by statute.

(c) No records of the Department of Labor with respect to matters specifically authorized under criteria established by Executive order to be kept secret in the interest of the national defense or foreign policy and properly classified pursuant to such order shall be made available for inspection or copying under the provisions of this part. Records concerning such matters are expressly excluded from the application of the disclosure requirements of the Freedom of Information Act by the provisions of 5 U.S.C. 552(b)(1).

22,[37] 70.24,[38] and 70.31.[39] Third, it contended that the FOIA and OFCC disclosure rules as applied to Chrysler violate due process in that they afford no meaningful right to be heard initially or on appeal before disclosure of Chrysler's confidential information. By a stipulation and consent order the *pendente lite* restraints were continued until final hearing. In its pre-trial papers the government defendants objected to the court's jurisdiction and to the holding of an evidentiary hearing. The court reserved decision on these objections until a decision on the merits. Trial on the merits was held on August 25 and 26, 1975, and thereafter the parties filed a detailed "Stipulation of Facts and Issues."

37. *Id.* at 70.22 provides:

(a) *Records exempt from statutory disclosure requirements.* The Freedom of Information Act, as codified in 5 U.S.C. 552, lists nine categories of records (in 5 U.S.C. 552(b)) to which the disclosure requirements of the statute do not apply. The first and third of these relate to the records described in § 70.21 which are not disclosable because protected from disclosure by the express provisions of a statute or a secret classification authorized by Executive order in the interest of national defense or foreign policy. The other seven categories of records excluded from the statutory disclosure requirements are set forth in §§ 70.23 through 70.28, inclusive. Information from records in these seven categories may, however, be made available for inspection and copying as provided in paragraph (b) of this section.

(b) *Disclosure of protected records; conditions precedent.* Although the Department of Labor is not required by the Freedom of Information Act to make available for inspection or copying any materials or documents included in its records which are within the categories described in 5 U.S.C. 552(b)(2), (4), (5), (6), (7), (8), or (9) (see §§ 70.23–70.-28), under the Department's disclosure policy set forth in § 70.11 particular records requested which come within these categories, or portions thereof, shall nevertheless be made available to the extent, but only to the extent, that the appropriate officer authorized to disclose information from Department records determines that the disclosure will further the public interest and will not impede the discharge of any of the functions of the Department of Labor. Such a determination shall be made with due regard not only to the public interest in accessibility to the people of information regarding operations of their Government but also to the public interest in protecting citizens from impairment of their rights to privacy or from harassment, injury, or the dissemination of information concerning them which is privileged or has been submitted by them to the Government on a confidential basis. In determining whether access to such records will be permitted, due consideration shall also be given to the public interest in preventing disclosure of information which would handicap, ob-struct, or jeopardize effective performance of the Department's functions under statutes or Executive orders, including its duties with respect to law enforcement.

38. *Id.* at 70.24 provides:

(a) Pursuant to exemption (4) set forth in 5 U.S.C. 552(b), and as provided in § 70.22, the disclosure from Department of Labor records of matters that are trade secrets, and of commercial and financial information obtained from a person and privileged or confidential, may be refused. Legal requirements of secrecy and prohibitions of disclosure may apply to such records as set forth in § 70.21. Disclosure shall be refused where these mandatory restrictions apply to the records sought. Even where denial of access is not required by these restrictions, access to records exempted from the disclosure requirements by exemption (4) cannot be granted under the policy expressed in §§ 70.11 and 70.22 unless the disclosure officer, in balancing the right of the public to know how the Government operates against the need of the Government to keep information in confidence and the right of the person from whom it was obtained to have privileges and confidences respected, is able to determine that disclosure will serve the public interest and not impede the discharge of any function of the Department of Labor.

(b) The intent of the examination set forth in paragraph (a) of this section to protect privileged or confidential information is, according to the committee reports in both Houses of Congress, not restricted to the trade secrets and commercial or financial information specifically mentioned in the statute. Information the disclosure of which may be refused pursuant to this exemption is, according to the legislative history, intended to include information customarily subject to a doctor-patient, lawyer-client, or other such privilege.

(c) Information "obtained from any person" would include information obtained from a person inside as well as outside the Government. The applicability of this exemption does not depend on whether the record contains information obtained from the public at large, from a particular person,

39. See note 39 on page 1182.

■ The district court's opinion correctly holds that there is subject matter jurisdiction under 28 U.S.C. § 1331(a).[40] On the merits the court found that part of the information the agency proposed to release, described generically as the "manning tables,"[41] was confidential commercial information, the release of which could cause Chrysler substantial competitive harm.[42] On the basis of this finding the court con-

from within the Department, or from another agency. While information which is confidential in the hands of one agency retains its protected character in the hands of agencies to which it is subsequently furnished, the exemption does not sanction the rendering of documents confidential by the expedient of transferring them among agencies.

(d) Except as otherwise provided in this part (e. g., § 70.13), disclosure in certain circumstances may be refused of material such as formulae, designs, drawings, research data, and the like, which are significant not as records but as items of valuable property. These may have been developed by or for the Government for its use and at its expense. Nothing in the legislative history suggests that the Freedom of Information Act was intended to give away such valuable property to any person willing to pay the price of making a copy. Where similar property in private hands would be held in confidence, the public interest would appear to require that such property in the hands of an agency should be protected under exemption (4).

(e) This exemption is further intended to extend protection to other information in Government records which has been furnished and accepted in confidence and which would not customarily be released to the public by the person from whom the Government obtained it. See, for example, the House Report (H. Rept. 1497, 89th Cong., 2d Sess.) and the President's signing statement. Accordingly, the exemption assures the confidentiality of information thus obtained by the Department of Labor through questionnaires and required reports to the extent that the information would not customarily be made public by the person from whom it was obtained. Nothing in the Freedom of Information Act necessitates a disregard of the right of individuals or groups to rely in good faith on an understanding of confidentiality for which a Government agency has reasonably afforded a basis. Maintenance of citizens' respect for governmental fairness requires that such understandings be given due consideration. At the same time, Department representatives should be alert to discourage the development of such understandings where not clearly warranted by departmental responsibilities.

(f) Pursuant to exemption (8) set forth in 5 U.S.C. 552(b), and as provided in § 70.22, the disclosure from Department of Labor records of any matter contained in, or related to, examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions, may be refused. Exemption (8) emphasizes the application to financial institutions of the protection from disclosure afforded by the exemption set forth in paragraph (a) of this section, and makes plain the intent to protect information relating to such institutions which may be prepared for or used by any agency responsible for the regulation or supervision of such institutions. Access to any such information in records of the Labor Department will be refused where disclosure is not legally permitted or where a determination to disclose is inappropriate for reasons discussed in paragraph (a) of this section. In cases where another agency is concerned with information protected by exemption (8) in 5 U.S.C. 552(b) which is sought from records of the Department, the provisions of § 70.31 are also applicable.

**39.** *Id.* at 70.31 provides:

If the release of a record in custody of the Department of Labor would be of concern not only to the Department but also to another Federal agency, the record will be made available by the Department only if its interest in the record is the primary interest and only after coordination with the other interested agency. If the interest of the Department in the record is not primary, the request will be transferred promptly to the agency having the primary interest, and the applicant will be so notified. The release of information received from another agency and the release to another agency of information collected from persons outside the Government shall be subject to the conditions and restrictions imposed by 44 U.S.C. 3508.

**40.** *E. g., Planning Research Corp. v. F.P.C.,* 555 F.2d 970 (D.C.Cir.1977); *Westinghouse Elec. Corp. v. Schlesinger,* supra, 542 F.2d at 1209–10; *Sears, Roebuck & Co. v. General Services Administration,* 553 F.2d 1378, at 1380 n.6 (D.C.Cir. 1977); *see Bachowski v. Brennan,* 502 F.2d 79, 82 (3d Cir. 1974), *rev'd on other grounds,* 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *cf. Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**41.** The district court described the manning tables as lists of Chrysler's internally used job titles and the number of people who perform each job.

**42.** In reaching this conclusion the court relied on the testimony of Chrysler's witnesses, rather than on the rather spare administrative record.

cluded that the manning tables constituted information falling within exemption (b)(4) of the FOIA and was therefore exempt from its mandatory disclosure provisions. The court then reasoned that since the manning tables constituted exempt information under the FOIA, whether DSA possessed the power to disclose these documents was to be determined by reference to other federal disclosure statutes, apart from the FOIA. Thus the court rejected Chrysler's argument that the FOIA creates a so-called reverse FOIA cause of action based on the theory that Congress, by exempting certain information from mandatory disclosure, intended to prohibit absolutely all agency disclosure of such exempt information under any circumstances.[43] Instead, the court held that 18 U.S.C. § 1905,[44] a criminal statute, made it a crime for a government employee to disclose the manning tables. Observing that the Secretary of Labor, on the authority of 5 U.S.C. § 301,[45] a general statute providing for the use and custody of government records, promulgated 29 C.F.R. § 70.21(a),[46] which forbids disclosure of confidential information the release of which would violate 18 U.S.C. § 1905, the court concluded that DSA was acting in violation of its own regulations and contrary to law. Thus, it construed what it held to be DSA's governing regulation as consistent with 18 U.S.C. § 1905. It issued the injunction appealed from on the authority of 5 U.S.C. § 706(2)(A) to prevent agency action "not in accordance with law." The court also held that 42 U.S.C. § 2000e–8(e) was inapplicable and rejected Chrysler's due process contentions.

## IV
## DISCUSSION

This case is one of a burgeoning number growing out of the conflict between the demands of federal regulatory agencies, as a necessary by-product of their regulatory activities, for the submission by private businesses of detailed financial, commercial and employee information, which would not voluntarily be disclosed to competitors, and the public access to most information in federal agency files which is mandated by the FOIA. It is, however, the first occasion which requires this Court to consider a reverse FOIA case, in which a corporate plaintiff (the submitter) seeks to enjoin an agency from disclosing submitter-generated business information.[47] The case presents several important issues about agency management of such information, about agency discretion to disclose information in the public interest, about submitter rights prior to disclosure, and about the availability of remedies for the prevention of disclosure.

The FOIA requires agencies to disclose upon request any information not falling

**43.** *See generally* Clement, The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit, 55 Texas L.R. 587 (1977); Note, Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection, 70 Nw.U.L.Rev. 995 (1976); Note, Protection From Government Disclosure—The Reverse-FOIA Suit, 1976 Duke L.J. 330.

**44.** 18 U.S.C. § 1905 provides:
Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

**45.** *See* text following n.69 *infra.*

**46.** *See* n.36 *supra.*

**47.** *But cf. Westinghouse Elec. Corp. v. United States Nuclear Regulatory Comm'n,* 555 F.2d 82, 93–94 (3d Cir. 1977).

within one of nine specifically exempted categories.[48] The arguments of Chrysler and other corporate submitters seeking to prevent disclosure break down into three broad categories. First, Chrysler and others have urged that the FOIA itself both prohibits agency disclosure of information falling within any of the nine exemptions and affords an implied cause of action for injunctive or declaratory relief to prevent such disclosure. Second, they have claimed that even if the FOIA does not prohibit agency disclosure of exempt FOIA information, other statutes, such as 18 U.S.C. § 1905 and 42 U.S.C. § 2000e–8(e) do so and afford an implied cause of action. Third, they contend that disclosure of submitter-generated business information that is exempt under the FOIA or protected by some other federal statute or regulation is an abuse of agency discretion subject to judicial review under the Administrative Procedure Act at the behest of a submitter adversely affected by such agency action. The first two categories would afford relief in the form of a trial *de novo,* while in the third judicial review would be limited to that available under 5 U.S.C. § 706. The posture of this appeal and cross-appeal requires that we address each theory on which a reverse FOIA action could be founded.

## A. *The Freedom of Information Act*

■ The FOIA expressly creates a cause of action in favor of requesters of information to enjoin federal agencies from withholding information.[49] It does not by its terms provide a cause of action for submitters of information to prevent disclosure. But while there is no express provision for an action by submitters, the FOIA's nine

categories of exempt information [50] reveal a Congressional concern that disclosure of certain information might injure interests in privacy or confidentiality which may be as important as the public's right to general access to agency information. The fourth FOIA exemption, for example, covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential." [51] There is ample Congressional history suggesting that Congress sought to afford some protection of submitters' interest in the confidentiality of such information.[52] Moreover we recognize that disclosure of submitter information is qualitatively different from disclosure of data directly relating to government operations and that the interest in privacy appears stronger with respect to the former than the latter. But while the Congressional concern over confidentiality of submitter information is clear, an intention to make mandatory the non-disclosure of exempt information is less so, and the evidence of an intent to create a submitter cause of action is practically non-existent.

Among the circuits which have considered the issue, the District of Columbia [53] and the Fifth Circuits [54] have held that the FOIA exemptions are permissive and do not mandate agency withholding of exempt information. The Fourth Circuit has held that the exemptions mandate non-disclosure.[55] The Ninth Circuit, while first holding that the exemptions are mandatory, on rehearing withdrew that part of its opinion as premature.[56] The closest the Supreme Court has come to addressing the issue is the statement in *E. P. A. v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119

**48.** See n.18 *supra.*

**49.** 5 U.S.C. § 552(a)(4)(B) (Supp. V 1975).

**50.** See n.18 *supra.*

**51.** *Id.*

**52.** *See, e. g.,* S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965); H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10, reprinted in 2 U.S.Code Cong. & Admin.News pp. 2418, 2427 (1966).

**53.** *Charles River Park "A", Inc. v. Department of HUD,* 171 U.S.App.D.C. 286, 519 F.2d 935 (1975).

**54.** *Pennzoil Co. v. FPC,* 534 F.2d 627 (5th Cir. 1976).

**55.** *Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190 (4th Cir. 1976), *cert. denied sub nom., Brown v. Westinghouse Elec. Corp.,* 431 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977) (apparently overruling *Moore-McCormack Lines, Inc. v. I. T. O. Corp.,* 508 F.2d 945, 950 (4th Cir. 1974)).

**56.** *Union Oil Co. of California v. FPC,* 542 F.2d 1036, 1045 (9th Cir. 1976).

(1973), that the FOIA exemptions represent "the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses."[57] In our view, none of the opinions referred to contains a complete analysis of the myriad problems presented in reverse FOIA cases.

■ We conclude that Congress in the FOIA intended neither that the exemptions make non-disclosure mandatory, nor that they provide the predicate for an implied cause of action. The two questions are interdependent, since it would obviously be difficult to imply a cause of action under the FOIA to bar government officials from releasing information the disclosure of which Congress intended to leave to agency discretion or other federal disclosure statutes. Both the plain language of § 552(b)[58] and the Congressional reports and debates suggest that no more was intended than a discretionary exception to the general mandatory duty of disclosure.[59] Nor can we ignore the contrast between the FOIA's express grant of a cause of action for requesters of information[60] and its silence respecting submitter relief. Moreover, we note that when Congress in the Privacy Act of 1974[61] decided to create a civil cause of action to enjoin agency disclosure of FOIA exempt information, it did so explicitly. See 5 U.S.C. § 552a(g)(1) (Supp. V 1975). But only private persons, not business entities, were afforded this protection.[62] Finally, we think that judicial reconstruction of the statute to imply from the exemptions either a mandatory duty of non-disclosure or a cause of action to prevent disclosure would be inconsistent with the basic purpose of the FOIA, which was not to afford confidentiality, but to overcome restrictive agency interpretations of the original public information section of the Administrative Procedure Act.[63] The general philosophy reflected in the FOIA is that of full agency disclosure to provide the public with speedy access to relevant information.[64] Recognizing an implied cause of action to prevent agency disclosure of exempt FOIA information would, we think, be inconsistent with that general philosophy, since it would place in the hands of interested submitters of information, rather than those of presumably disinterested governmental officials, the

**57.** See FAA Administrator v. Robertson, 422 U.S. 255, 262, 269 n.1, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

**58.** The subsection of the FOIA dealing with exempt information only states that the Act's mandatory disclosure requirement "does not apply to matters that are" within the nine exempt categories. See n. 18 supra.

**59.** E. g., H.Rep. No. 1497, supra n.52, at 2, 5–7, reprinted in 2 U.S.Code Cong. & Admin.News 2418, 2419, 2422–24 (1966); S.Rep. No. 813, supra n.52, at 10; 112 Cong.Rec. 13641 (remarks of Representative Moss, sponsor of the FOIA in the House). But see id. at 13645 (remarks of Representative King), 13649 (remarks of Representative Fascell).

**60.** See n.49 supra.

**61.** Pub.L. No. 93–597, 88 Stat.1896, codified at 5 U.S.C. § 552a(b) (Supp. V 1975). The Privacy Act covers exempt FOIA information which relates to individuals and provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to any other agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains . . .."

**62.** The Senate Report to the Privacy Act states that the Act is intended to

distinguish between the rights which are given to the citizen as an individual under this Act and the rights of proprietorships, businesses and corporations, which are not intended to be covered by this Act. This distinction was to insure that the bill leaves untouched the Federal Government's information activities for such purposes as economic regulations.

S.Rep. No. 1183, 93d Cong., 2d Sess. 79, U.S. Code Cong. & Admin.News 1974 pp. 6916, 6993 (1974).

**63.** See S.Rep. No. 813, supra n.52, at 4, S.Rep. No. 93–854, 93d Cong., 2d Sess. at 6 (1974); H.Rep. No. 1497, supra n.52, at 4–5, reprinted in 2 U.S.Code Cong. & Admin.News 2418, 2421–22 (1966); H.R.Rep. No. 93–221, 93d Cong., 1st Sess. at 59–60 (1973).

**64.** Id.

authority to take steps which might impede the dissemination of information of public importance. Thus we hold that the FOIA's language, legislative history, and philosophy of full disclosure bar a construction of the Act which mandates agency withholding of exempt information or recognizes an implied cause of action to prevent the disclosure of such information.

### B. *Other Non-Disclosure Statutes*

Although we conclude that the FOIA does not limit the discretionary power of federal agencies to disclose exempt FOIA information, we recognize that the exercise of this discretionary authority may be prohibited, or substantially curtailed, by other federal non-disclosure statutes.[65] *See FAA Administrator v. Robertson, supra,* 422 U.S. at 264–66, 95 S.Ct. 2140. Chrysler contends that, apart from the FOIA, at least three non-disclosure statutes prohibit DSA from releasing the contested documents. Our consideration of that contention requires, with respect to each statute, the same dual inquiry we made respecting the FOIA: (1) does the statute forbid disclosure of the documents in issue; and (2) if so, can a private cause of action be implied from it.

### 1. 18 U.S.C. § 1905.

■ The statute on which Chrysler and most other reverse FOIA plaintiffs[66] place principal reliance is 18 U.S.C. § 1905. On its face, this broadly worded criminal statute encompasses virtually every category of business information likely to be in the files of any federal agency.[67] However, in *Westinghouse Elec. Corp. v. Nuclear Regulatory Commission, supra,* we noted that § 1905's broad non-disclosure prohibitions apply only to disclosures "not authorized by law" and held that information disclosed pursuant to

a validly enacted agency regulation is authorized by law.[68] Chrysler urges that in *Westinghouse* we erred, that an agency regulation does not have the force of law for purposes of § 1905, and that only specific Congressional statutes can authorize the release of information covered by § 1905. Moreover, it urges that even assuming the correctness of *Westinghouse,* disclosures pursuant to the OFCC disclosure regulations are not authorized by law for purposes of § 1905, because these regulations were adopted under the authority of 5 U.S.C. § 301 and because Congress intended that § 301 not be used to limit the scope of § 1905.

■ While our discussion of the scope of the "not authorized by law" qualification to § 1905 in *Westinghouse* was not extended, we are confident that the holding is correct. In *Westinghouse* we found authority for the promulgation of the Nuclear Regulatory Commission's disclosure regulations in that agency's Congressionally enacted enabling act. That holding was consistent with those of the Supreme Court in cases involving the disclosure of information by other federal agencies.[69] Though OFCC has no statutory enabling act, it is authorized to promulgate disclosure regulations under the so-called housekeeping statute, 5 U.S.C. § 301, which provides in part:

> The head of an executive department or military department may prescribe regulations for . . . the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

Section 301 can be traced to the Act of July 27, 1789, Ch. 4, § 4, 1 Stat. 28, dealing with

---

**65.** For a compilation of federal non-disclosure statutes see Clement, *supra* n.43, at 598 n.40.

**66.** *See, e. g., Westinghouse Elec. Corp. v. Schlesinger, supra* n.55; *Charles River Park "A", Inc., supra* n.53.

**67.** *See* n.44 *supra* for text.

**68.** 555 F.2d at 94.

**69.** *See, e. g., FCC v. Schreiber,* 381 U.S. 279, 289–94, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); *Isbrandtsen-Moller Co. v. United States,* 300 U.S. 139, 57 S.Ct. 407, 81 L.Ed. 562 (1937); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

records of the State Department, and the Act of August 7, 1789, Ch. 7, § 4, 1 Stat. 49, dealing with records of the War Department. Various housekeeping statutes were collected and codified in 1874,[70] and, as codified, granted authority to prescribe disclosure regulations. The present version, and in particular the last sentence, was enacted in 1958.[71] The legislative history makes clear that the addition of the last sentence was aimed at stopping agencies from relying on the housekeeping statute as authority to deny the requests of citizens for information.[72]

In *Non-Resident Taxpayers Ass'n v. Municipality of Philadelphia,* 478 F.2d 456 (3d Cir. 1973), we held that § 301 authorized a Bureau of the Budget circular that instructs executive departments to furnish information to state and local taxing authorities regarding compensation paid to federal employees. Such a disclosure, absent the regulation, would clearly conflict with the broad language of § 1905. Thus, although we did not expressly address § 1905 in *Non-Resident Taxpayers Ass'n,* the holding is consistent with our conclusion in *Westinghouse,* that disclosures pursuant to validly adopted agency regulations are not subject to the strictures of § 1905.

We have been referred to no legislative history suggesting that § 1905, a 1948 codification of a group of statutes applicable to specific agencies,[73] was intended to limit the longstanding rulemaking authority under the 1874 codification of the housekeeping statute. Nor do we attach to the statement of Congressman Moss, respecting the 1958 amendment to the housekeeping statute (adding the last sentence of § 301), the same significance as did the District of Columbia Circuit in *Charles River Park "A", Inc. v. Department of HUD, supra,* 519 F.2d at 942–43. Relying on Congressman Moss' statement that the 1958 amendment "does not affect the confidential status of information given to the government and carefully detailed in Title 18, United States Code, Section 1905 . . . .",[74] that court concluded that "§ 301 does not authorize regulations limiting the scope of § 1905." [75] In doing so, however, the court took the statement out of context. Congressman Moss only stated that the amendment would not affect the confidential status of information covered by § 1905. He did not say that the amendment eliminated disclosure authority existing since 1789 or that it eliminated the "authorized by law" qualification in § 1905. Such an interpretation of the 1958 amendment is totally at odds with its central purpose—the elimination of governmental secrecy[76]—as it would transmogrify § 1905 into a weapon for those parties who advocate government secrecy. Thus we adhere to the position we took in *Non-Resident Taxpayers Ass'n,* that § 301 is a separate source of agency authority for the promulgation of disclosure regulations and that disclosures pursuant to such regulations are authorized by law and immune from the prohibitions of § 1905. Since the

70. *See* Revised Statutes of the United States § 161 (1st ed. 1873–1874).

71. Act of Aug. 12, 1958, Pub.L. No. 85–619, 72 Stat. 547.

72. *See* S.Rep. No. 1621, 85th Cong., 2d Sess. 3–4 (1958); H.R.Rep. No. 1461, 85th Cong., 2d Sess. 2 (1958).

73. *See* Act of June 25, 1948, ch. 645, § 1905, 62 Stat. 683 (codified at 18 U.S.C. § 1905 (1970)). The Revisers' Notes in the House report, H.R. Rep. No. 304, 80th Cong., 1st Sess. A127–A128 (1947), accompanying the 1948 revision of the Criminal Code, state that § 1905 consolidated an income tax statute, 18 U.S.C. § 216 (1940), a Tariff Commission statute, 19 U.S.C. § 1335 (1940), and a Commerce Department statute, 15 U.S.C. § 176a (1940). The Consumer Federation of America urges in its amicus brief that § 1905 should be interpreted narrowly and consistently with interpretations of these three predecessor statutes. *See, e. g., United States v. Cook,* 384 U.S. 257, 86 S.Ct. 1412, 16 L.Ed.2d 516 (1966). The basis of our decision in this case precludes consideration of that contention. For an excellent discussion of the legislative history of § 1905 and its predecessor statutes, see Clement, *supra* n. 43, at 607–617.

74. 104 Cong.Rec. 6550 (1958).

75. 519 F.2d at 942–43.

76. *See* n.72 *supra.*

OFCC disclosure regulations are valid under § 301, all disclosures pursuant to those regulations are authorized by law and therefore not subject to § 1905.

Since we find authority for the promulgation of the OFCC disclosure regulations in § 301, we need not consider whether the FOIA itself, properly construed, is an independent source of authority for the promulgation of disclosure regulations for exempt information.[77] Nor need we decide whether, absent § 301, Executive Order 11246, which confers authority on the Secretary of Labor to adopt "such rules and regulations . . . as he deems necessary to achieve the purposes of the order",[78] is a separate source of authority for such promulgation. Our deferment of these grounds for sustaining the regulations should not be considered an expression of doubt as to these sources of authority, but only of confidence in our prior § 301 holding.

■ Even if we were incorrect in the *Westinghouse* holding that agency regulations are laws for purposes of the qualification to § 1905, we would, in any event, reject the proposition that § 1905, would serve as a predicate for a private civil cause of action. Recent pronouncements of the Supreme Court have severely limited the circumstances in which a federal court may imply a private cause of action from a federal statute.[79] Whatever the merits of this trend, the decisions bind us. Here the criminal statute provides for a fine of not more than $1000, imprisonment for not more than a year, and automatic removal from office upon conviction. The adequacy of these penalties would seem to assure the

achievement of the Congressional objectives underlying § 1905. The very breadth of the prohibitions in § 1905 militates against opening the courts to civil suits which may involve substantial problems of construction. Moreover, as we hold hereafter, there is an available remedy under the Administrative Procedure Act, in which judicial review will be enlightened by agency interpretation. We do not believe we can properly imply a cause of action, and thus the right to a trial *de novo,* from § 1905.

### 2. 42 U.S.C. § 2000e–8(e)

■ Section 709(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–8(e), is a criminal statute making it unlawful

for any officer or employee of [EEOC] to make public in any manner whatever any information obtained by [EEOC] pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information.

Like § 1905, the maximum fine is $1000 and the maximum imprisonment one year. And, as with § 1905 and the FOIA, we must determine both whether the prohibition in § 709(e) applies and, if it does, whether a private cause of action for its enforcement may be implied. By its terms § 709(e) applies only to employees of EEOC and only to information obtained by that agency on its own statutory authority. Since it is a criminal statute, ordinary rules of construction would seem to preclude its application, at least in a criminal enforcement context, to officers or employees of a different agency or to information obtained by a different

---

**77.** *See General Services Administration v. Benson,* 415 F.2d 878, 880 (9th Cir. 1969). A number of federal agencies in addition to OFCC have promulgated such regulations. *See* 28 C.F.R. § 16.1(a) (1976) (Justice Dept.); 43 C.F.R. § 2.13(d) (1976) (Interior Dept.); 45 C.F.R. § 4.74 (1976) (H.E.W.); 29 C.F.R. § 70.-11(b) (1976) (Labor Dept.); 24 C.F.R. § 15.21 (1976) (HUD); 49 C.F.R. § 7.51 (1976) (Transportation Dept.); 32 C.F.R. § 286.4(b) (Defense Dept.); 41 C.F.R. § 105–60.104–2 (1976) (GSA); 39 Fed.Reg. 44,602 (1974) (FDA); 39 Fed.Reg.

30,298 (1974) (Consumer Product Safety Commission).

**78.** *See* n.6 *supra.*

**79.** *See, e. g., Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Securities Investors Protection Corp. v. Barbour,* 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National R. R. Passenger Corp. v. National Ass'n of R. R. Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

agency under that agency's separate authority. Two circuits have concluded that OFCC compliance agencies are not governed by the § 709(e) prohibition.[80] Chrysler argues that those cases were wrongly decided, first, because OFCC and EEOC are performing identical antidiscrimination functions and, second, because the EEO–1 reports are filed initially with the Joint Reporting Committee,[81] which it describes as the alter ego of EEOC.

It has long since been settled in this circuit that the federal government's antidiscrimination effort directed at government contractors rests upon a different authority and even serves a different, though complementary, purpose than the efforts of EEOC.[82] The Executive Order program antedated the passage of Title VII, and Congress has rejected proposals to transfer the Executive Order functions of OFCC to EEOC.[83] The two agencies function independently, and we decline the invitation to disregard that independence in order to read § 709(e) as applicable to OFCC compliance agencies such as DSA.

The argument that the Joint Reporting Committee (JRC) is the alter ego of EEOC and that all EEO–1 forms filed with JRC must therefore fall within § 709(e) is no more persuasive. The JRC is a consequence of the 1972 amendments to Title VII which established the Equal Employment Opportunity Coordinating Council, 42 U.S.C. § 2000e–14. The Coordinating Council is responsible for, among other things, implementing inter-agency agreements to eliminate duplication among the operations, functions, and jurisdictions of various federal agencies enforcing federal antidiscrimination employment policies. JRC was organized by the Coordinating Council to streamline the collection of employment discrimination information and to distribute it, without the necessity for multiple filings, to the separate agencies involved.[84] It is clear that JRC is the agent of several enforcement authorities. Nevertheless, nothing in 42 U.S.C. § 2000e–14 or in the implementing regulations which created JRC suggests an intention to extend the applicability of § 709(e) to federal employees outside EEOC or to information possessed by other agencies on their own authority.

■ Even assuming the applicability of § 709(e) to DSA, we are no more persuaded that a private cause of action can be implied from this criminal statute than from § 1905. The same reasons for our rejection of a private cause of action implied from § 1905 apply to § 709(e), and we will not repeat them. Chrysler's argument for a right to a trial *de novo* based on § 709(e) of Title VII is rejected.

### 3. 44 U.S.C. § 3508

■ Section 423 of the Federal Reports Act of 1942,[85] now codified as 44 U.S.C. § 3508,[86] provides:

---

**80.** *Westinghouse Elec. Corp. v. Schlesinger,* 542 F.2d 1190, 1199 (4th Cir. 1976), *cert. denied sub nom., Brown v. Westinghouse Elec. Corp.,* 413 U.S. 924, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977); *Sears, Roebuck and Co. v. General Services Admin.,* 166 U.S.App.D.C. 194, 509 F.2d 527, 529 (D.C.Cir. 1974). *But cf. Chamber of Commerce v. Legal Aid Society,* 423 U.S. 1309, 96 S.Ct. 5, 46 L.Ed.2d 14 (1975) (Douglas, J., denying motion for a stay).

**81.** *See* n.21 *supra.*

**82.** *Contractors Ass'n of Eastern Pa. v. Secretary of Labor,* 442 F.2d 159, 173 (3d Cir. 1971), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); *EEOC v. AT&T,* 556 F.2d 167 (3d Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3159 (U.S. Aug. 12, 1977) (No. 77–241).

**83.** *Compare* H.Rep. No. 92–238, 92d Cong.2d Sess., reprinted in U.S.Code Cong. & Admin. News pp. 2137, 2150 (1972) (suggesting the transfer of OFCC to EEOC) *with* the final version of the 1972 amendments to Title VII, Pub.L. No. 92–261, 86 Stat. 104.

**84.** *See, e. g.,* 41 C.F.R. 60–40.4.

**85.** Pub.L. No. 77–831, ch. 811, § 4, 56 Stat. 1079. This act was designed to minimize the burden and expense to citizens of complying with multiple government requests for information and to eliminate unnecessary duplication of reporting requirements. *See* 88 Cong.Rec. 9165 (Nov. 27, 1942).

**86.** Pub.L. No. 90–620, 82 Stat. 1304.

(a) If information obtained in confidence by a Federal agency is released by that agency to another Federal agency, all the provisions of law including penalties which relate to the unlawful disclosure of information apply to the officers and employees of the agency to which information is released to the same extent and in the same manner as the provisions apply to the officers and employees of the agency which originally obtained the information. The officers and employees of the agency to which the information is released, in addition, shall be subject to the same provisions of law, including penalties, relating to the unlawful disclosure of information as if the information had been collected directly by that agency.

(b) Information obtained by a Federal agency from a person under this chapter may be released to another Federal agency only—

(1) in the form of statistical totals or summaries; or

(2) if the information as supplied by persons to a Federal agency had not, at the time of collection, been declared by that agency or by a superior authority to be confidential; or

(3) when the persons supplying the information consent to the release of it to a second agency by the agency to which the information was originally supplied; or

(4) when the Federal agency to which another Federal agency releases the information has authority to collect the information itself and the authority is supported by legal provision for criminal penalties against persons failing to supply the information.

Chrysler argues that by virtue of the second sentence in § 3508(a) the employees of DSA are subject to the criminal provisions of § 709(e) of Title VII, even though that criminal statute would otherwise be applicable only to EEOC employees. This argu-

ment, however, assumes that DSA obtained the information in question from EEOC. Clearly that is not the case with respect to the AAP's, the CIR's, or the CRR's. Though DSA and EEOC both obtain Chrysler's EEO-1 reports from the JRC, in the preceding subsection we rejected Chrysler's contention that the JRC is an alter ego of EEOC, rather than a collection agent of both EEOC and OFCC. Since DSA did not obtain the EEO-1 reports from EEOC but, instead, obtained this information on its own behalf in the first instance, § 3508(a) does not apply. *Sears, Roebuck & Co. v. GSA,* 166 U.S.App.D.C. 194, 509 F.2d 527, 529 (1974). Nor may Chrysler argue that the provisions of § 3508(b) prohibit DSA from publicly disclosing the contested documents, since this subsection only governs inter-agency transfers of information and is not applicable to agency decisions to disclose information to the general public.

We hold that § 3508 is entirely inapplicable to the case before us. Whether this statute, which contains no sanctions, would support an implied private cause of action to prevent inter-agency transfers of information in violation of its terms is a question of some difficulty, which we do not here decide.

C. *The Administrative Procedure Act*

 The government first took the position that there could be no judicial review, on behalf of a submitter, of an agency decision to release information requested by third parties under the FOIA. It now concedes that judicial review pursuant to the Administrative Procedure Act (APA) is available because a submitter may be "[a] person suffering legal wrong because of agency action . . . within the meaning of a relevant statute." [87] In light of that concession there is no need to expound at length on the reasons why we agree with those courts which have held that the APA provides a cause of action for enjoining an agency from disclosing submitter-generated information.[88] The district court rejected

---

87. 5 U.S.C. § 702 (1970). *See* text following n.4 *supra.*

88. *See, e. g., Charles River Park "A", Inc., supra,* 519 F.2d at 941 n.6; *Pennzoil Co. v. F. P.*

the government's first position and held that judicial review was available under the APA. But while we agree with that ruling, we have some difficulties with its application in this case.

▮ Our first difficulty is with the district court's holding that DSA, in its decision to disclose the manning tables, which the court viewed as confidential data, was acting in violation of its own regulations, 29 C.F.R. § 70.21(a),[89] and thus "not in accordance with law." [90] Although 29 C.F.R. § 70.21(a) is modeled after the criminal disclosure prohibitions in 18 U.S.C. § 1905,[91] it, like § 1905, only prohibits disclosures "not authorized by law." Since we have held that any disclosures pursuant to the OFCC disclosure regulations are authorized by law, the prohibitions in 29 C.F.R. § 70.-21(a) are not applicable to this case.

Our second difficulty with the decision concerns the proper scope of judicial review under the APA. In reaching its decision the district court held a trial *de novo* on the merits of Chrysler's assertions and relied heavily on the trial testimony of Chrysler's witnesses in reaching the determination that the manning tables constituted confidential data which DSA could not disclose. Judicial review under the APA ordinarily is limited to a "review of the whole [agency] record or parts of it cited by a party." [92] That rule is not inflexible, for certainly evidence may be taken in connection with an application under 5 U.S.C. § 705 for relief pending review. Moreover, the Supreme Court has approved *de novo* rather than agency record review (a) when the agency's action is adjudicatory in nature and its factfinding procedures are inadequate, or (b) when issues that were not before the agency are raised in a proceed-

ing to enforce nonadjudicatory agency action.[93] In this case, however, the district court relied on the testimony of trial witnesses not merely to decide the question of relief pending review, but also to decide the substantive merits. And in reaching the merits the court did not address the question whether an agency disclosure decision pursuant to the FOIA or agency disclosure regulations was adjudicatory and, if so, whether the agency's procedures on which the disclosure decision was based were adequate.[94]

▮ Chrysler, relying on *Sears, Roebuck & Co. v. General Services Administration*, 553 F.2d 1378, at 1381 (D.C.Cir. 1977), urges that regardless of the judicial review provisions of the Administrative Procedure Act, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides separate authority for the district court to hold a *de novo* hearing. That argument, however, would be equally applicable to every agency review case, and the Declaratory Judgment Act so construed would eliminate the effect of the later enacted Administrative Procedure Act. The Supreme Court stated in *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 246, 73 S.Ct. 236, 241, 97 L.Ed. 291 (1952), that "the declaratory judgment procedure will not be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal any more than it will be used as a substitute for statutory methods of review." To construe the Declaratory Judgment Act to permit a federal court to conduct a trial *de novo* in reverse FOIA cases would transfer primary decisional responsibility for agency disclosures from the administrative agencies to the federal courts. We think the construction which Congress intended is that the

---

*C., supra*, 534 F.2d at 631–32 (5th Cir. 1974); *GTE Sylvania, Inc. v. Consumer Product Safety Commission*, 404 F.Supp. 352, 366–67 (D.Del. 1975).

**89.** *See* n.36 *supra* for text.

**90.** 5 U.S.C. § 706(2)(A) (1970).

**91.** *Compare* 18 U.S.C. § 1905, *supra* at n.44, *with* 29 C.F.R. § 70.21(a), *supra* at n.36.

**92.** 5 U.S.C. § 706 (1970).

**93.** *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

**94.** Neither party contends that the district court was presented with any issues not before DSA.

scope of judicial review provisions of the Administrative Procedure Act apply in declaratory judgment actions.

▉ It seems to us that in reverse FOIA cases under the APA a reviewing court should make the following analysis. First it should inquire whether any non-disclosure statute or non-disclosure regulation is applicable. If so, the court must conclude that the agency has acted outside the scope of its statutory authority and should enjoin disclosure. If no non-disclosure statute or regulation applies, the court must then determine under what authority the agency intends to disclose the contested information. If the agency has concluded that the contested information does not fall within any FOIA exemption, thus mandating disclosure, the court must examine whether the agency applied the proper legal standards for the applicability of the FOIA exemptions. If, however, the agency has concluded (a) that the contested information does fall within a FOIA exemption, but (b) that public disclosure is, nevertheless, both desirable and permissible under the agency's own disclosure regulations, the court must undertake a two-step analysis. It must first examine whether the agency applied the proper legal standards for the applicability of the FOIA exemptions and, if so, then examine whether the agency considered the proper factors in determining that disclosure was permitted under its own disclosure regulations. Under the OFCC disclosure regulations, for example, the contested information in this case could only be disclosed if that agency determined that disclosure would "further the public interest and [not] impede the discharge of any of the functions of the OFCC or the Compliance Agencies."[95] And, as the FOIA exemptions make clear, disclosure of certain types of information will not, in the opinion of Congress, always be in the public interest. Finally, if the agency record does not establish, or insufficiently explains, the basis for the agency's decision, so as not to permit the reviewing court effectively to perform the above analysis, the remedy is not a trial *de novo*, but a remand to the agency for an additional record or explanation for its decision.[96] Interim relief can, of course, be ordered on the authority of 5 U.S.C. § 705.

▉ Applying the foregoing principles to this case, we conclude that this is an instance in which a remand to the agency is appropriate. The agency record is so ambiguous that it is impossible to determine whether the decision of DSA to disclose the contested information was based on a determination that disclosure is mandated by the FOIA or is in the public interest and thus permissible under that agency's own disclosure regulations. Even if the agency record clearly revealed that the disclosure decision was based on a determination that disclosure was mandated by the FOIA, a remand would still be necessary, as the record does not sufficiently disclose the basis for the agency determination that the FOIA exemptions are inapplicable. Nor would the result be any different if the record revealed that disclosure was pursuant to the agency's own regulations, as the record does not state that, or why, such disclosure would be in the public interest.

▉ Our decision to remand this case is based solely on the inadequacy of the administrative record under review. The government has urged that the district court should not have reached, and we should not now reach, the merits of the challenge to the actions of DSA because of Chrysler's failure to exhaust an administrative review remedy available in OFCC. We

---

**95.** 41 C.F.R. § 60–40.3(a), *see* n.19 *supra* for text; *id.* at § 60–40.2(a).

**96.** *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). We recognize that under *Camp v. Pitts,* testimony or affidavits from the administrator setting forth

the reasons for the decision made on agency record may sometimes be appropriate. No such testimony or affidavits were tendered in this case. Here we think a remand to the agency is appropriate for the reasons set forth in the text.

reject this contention. Judicial review of agency action must be available at a meaningful time, considering the nature of the alleged injury to the petitioner for review. As DSA announced in its letters, it considers the FOIA ten-day limit for action on requests for nonexempt FOIA information, 5 U.S.C. § 552(a)(6)(A)(i), binding on it regardless of the pendency of an administrative review proceeding. Since disclosure would render moot any judicial review, the nature of the subject matter demands that the action of DSA be regarded as the final agency action to which such review is directed. The administrative appeal to which the government refers is a creature of regulation, 41 C.F.R. § 60–60.4(d),[97] and the availability of that remedy cannot be permitted to destroy the subject matter of a proceeding seeking judicial review. If there were no pending FOIA requests and Chrysler were seeking an advance determination that some of the contested information should be withheld from the public, it would be appropriate to require exhaustion of a § 60–60.4(d) review in OFCC. But this case is not in that posture. The district court properly considered both the requests for interim relief and the merits of the claim for judicial review.

### D. Chrysler's Due Process Claims

 Chrysler contends that it was denied due process of law in the agency proceedings which led to the DSA decision to disclose the contested documents. To the extent that Chrysler's due process claims are procedural, we hold that, in light of the interests involved, OFCC disclosure regulation 41 C.F.R. § 60–60.4(d),[98] coupled with the process of administrative and judicial review set out above in Part IVC, meets fifth amendment due process standards. Any claim to substantive due process protection of "property" interests in information in the hands of the government is at this stage and on this record too speculative for our consideration. Since the Supreme

Court's decisions in *Goldstein v. California*, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) and *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974), there is considerable doubt as to what law, state or federal, and if state law, what state's law, should be looked to for such a "property" interest. The government urges that whether or not there is some proprietary interest in the disputed information, that interest is waived by any contractor doing business with the government. There is no need for us to endorse that position, which would require far more knowledge about government contracting statutes than has been furnished to us by the parties in this case. We do note that Chrysler has suggested no proprietary interest which would be broader than the categories made exempt from disclosure by 41 C.F.R. § 60–40.3(a).[99] Until we are faced with a final decision to release such information, we need not consider any substantive due process contentions.

### V

### CONCLUSION

The judgment of the district court shall be vacated and the case remanded to the district court for entry of an order that DSA conduct further proceedings consistent with this opinion. The district court should retain jurisdiction pending such further proceedings and may consider the entry of an appropriate protective order until their completion. Pending the entry of the district court's order pursuant to the mandate of this court, the extant stay order shall continue in effect. The appellant and appellees shall each bear their own costs.

**97.** *See* n. 27 *supra.*

**98.** *Id.*

**99.** *See* n.19 *supra.*