**GTE SYLVANIA INCORPORATED,**
**Plaintiff,**

**v.**

**CONSUMER PRODUCT SAFETY COM-**
**MISSION et al., Defendants.***

**Civ. A. No. 75–104.**

United States District Court,
D. Delaware.

Dec. 8, 1977.

See also, D.C., 438 F.Supp. 208.

* Consolidated with the following Plaintiffs in which Consumer Product Safety Commission is the Defendant; RCA Corp., 75–108; Magnavox Co., 75–112; Zenith Radio Corp., 75–113; Motorola, Inc., 75–114; Warwick Electronics, Inc., 75–115; Aeronutronic Ford Corp., 75–116; Admiral Corp., 75–131; General Electric Co., 75–136; Matsushita Electric Corp. of America, 75–150; Sharp Electronics Corp., 75–151; and Toshiba America, Inc., 75–152.

James M. Tunnell, Jr. and William H. Sudell, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Harry L. Shniderman, James M. McHaney, Jr. and Eugene C. Holloway of Covington & Burling, Washington, D. C., for plaintiffs GTE Sylvania Inc. and Aeronutronic Ford Corp. (C.A.No.75–104 and C.A.No.75–116).

Richard J. Abrams of Richards, Layton & Finger, Wilmington, Del., and Stephen B. Clarkson of Sullivan, Beauregard, Clarkson, Moss & Brown, Washington, D. C., for plaintiff The Magnavox Co. (C.A.No.75–112).

Januar D. Bove, Jr. of Connolly, Bove & Lodge, Wilmington, Del., and Thomas J. Touhey of Sullivan, Beauregard, Clarkson, Moss & Brown, Washington, D. C., for plaintiff Zenith Radio Corp. (C.A.No.75–113).

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for plaintiffs Motorola, Inc. (C.A.No.75–114), Matsushita Elec. Corp. of America (C.A.No. 75–150), Toshiba America, Inc. (C.A.No.75–152) and Sharp Electronics Corp. (C.A.No. 75–151).

Walter T. Kuhlmey of Kirkland & Ellis, Chicago, Ill., for plaintiff Motorola, Inc. (C.A.No.75–114).

Nancy L. Buc of Weil, Gotshal & Manges, New York City, for plaintiff Matsushita Elec. Corp. of America (C.A.No.75–150).

David Fleischer of Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for plaintiff Toshiba America, Inc. (C.A.No.75–152).

Peter A. Dankin of Wender, Murase & White, New York City, for plaintiff Sharp Electronics Corp. (C.A.No.75–151).

Andrew G. T. Moore, II of Connolly, Bove & Lodge, Wilmington, Del., and Charles C. Hileman, III, Ira P. Tiger, and Deena J. Schneider of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff RCA Corp. (C.A.No.75–108).

Howard M. Berg of Berg & Sawyer, P. A., Wilmington, Del., and Michael A. Stiegel of Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for plaintiff Warwick Electronics, Inc. (C.A.No.75–115).

Henry N. Herndon, Jr. and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, Del., and H. Woodruff Turner of Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff Admiral Corp. (C.A.No.75–131).

H. James Conaway, Jr. and Frederick W. Iobst of Young, Conaway, Stargatt & Taylor, Wilmington, Del., Robert W. Steele and Alan M. Grimaldi of Howrey & Simon, Washington, D. C., for plaintiff General Elec. Co. (C.A.No.75–136).

James W. Garvin, Jr., U. S. Atty. and John H. McDonald, Asst. U. S. Atty., Wilmington, Del., Barbara Allen Babcock, Asst. Atty. Gen., Sandra Wien Simon and Bruce Titus, Attys., Dept. of Justice, Washington, D. C., Theodore J. Garrish, Gen. Counsel and Jeanette Wiltse and Edward J. Cull, Attys., Consumer Product Safety Commission, Washington, D. C., for defendants.

## OPINION

LATCHUM, Chief Judge.

On October 23, 1975, this Court made extensive findings of fact and conclusions of law when it granted plaintiffs'[1] motions to enjoin preliminarily the Consumer Product Safety Commission (the "Commission") from disclosing certain "TV-related accident data" submitted by the plaintiffs and a computer printout summarizing that data to the public in response to a request made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *GTE Sylvania Inc. v. Consumer Product Safety Commission*, 404 F.Supp. 352 (D.Del.1975). Because the prior opinion sets forth the factual background of this litigation in great detail, it will not be rehearsed here.

The Court based its decision to grant a preliminary injunction on the Commission's failure to comply with Section 6(b)(1) of the Consumer Product Safety Act (the "Act"), 15 U.S.C. § 2055(b)(1). Section 6(b)(1) provides in pertinent part:

> The Commission shall take reasonable steps to assure, prior to its public disclosure thereof, [1] that information from which the identity of such manufacturer or private labeler may be readily ascertained is accurate, and [2] that such disclosure is fair in the circumstances and [3] reasonably related to effectuating the purposes of [the Act].

The Court found on the uncontested facts that the Commission had wholly failed to take reasonable steps to assure that any of the three prerequisites for public disclosure of the TV-related accident data were met. 404 F.Supp. at 370–73.

The consolidated cases are presently before the Court (1) on plaintiffs' motion for summary judgment to make the preliminary injunction permanent[2] and (2) on the Commission's motions to vacate the outstanding preliminary injunction and for summary judgment.[3]

Despite the two-year passage of time, the undisputed facts upon which the Court based its earlier decision have not changed. Thus, the Court need not reconsider any of its earlier findings and conclusions in order to take account of any intervening changes in the *factual* situation. However, the Commission does contend that there have been intervening *changes of law* which should prompt this Court to reconsider its previous decision. To these arguments we now turn.

## I. COMMISSION'S INTERPRETATION OF SECTION 6(b)

First, in opposing the plaintiffs' motions for a preliminary injunction, the Commission suggested that Section 6(b)(1) applies only to affirmative disclosures initiated by the agency, such as press releases and publications, and not to disclosures made in response to FOIA requests.[4] The Court rejected such an interpretation of Section 6(b) because it contravened the legislative history of the section.[5] Nevertheless, the Commission has renewed the argument, contending that two developments since the Court's previous decision support the Com-

---

1. Originally there were thirteen separate actions brought by as many television manufacturers which were consolidated for consideration of plaintiffs' motions for a preliminary injunction. Since the Court's opinion of October 23, 1975, the suit brought by Teledyne Mid-America Corp., C.A.No.75–122, has been dismissed by stipulation of the parties. Docket Item 63 (all docket item references are to C.A. No.75–104).

2. Docket Item 86.

3. Docket Items 79 & 80.

4. *See* Docket Item 35, p. 14, n. 4.

5. *GTE Sylvania Inc. v. Consumer Product Safety Commission, supra*, 404 F.Supp. at 369–70.

mission's position. The developments are: (1) the Commission formally endorsed the interpretation of Section 6(b)(1) which limits the section's applicability to "affirmative" disclosures initiated by the agency,[6] and (2) Congress, in explaining a 1976 amendment to Section 29 of the Act (15 U.S.C. § 2078), used language which arguably indicates acceptance of the Commission's interpretation. After considering both these developments, however, the Court remains convinced that Congress did not intend to make Section 6(b) inapplicable in the face of an FOIA request.

■ The Commission, relying on three Supreme Court cases,[7] contends that its interpretation of Section 6(b) deserves great weight in this Court. Although the cases cited establish the principle that on matters of statutory construction a court should give deference "to the interpretation given the statute by the officers or agency charged with its administration,"[8] they do not justify the application of that principle in this case. Two of them, *Zemel v. Rusk*, 381 U.S. 1, 11–12, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965) and *Udall v. Tallman*, 380 U.S. 1, 16–18, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), involved long-established administrative interpretations which the respective agencies had applied consistently and frequently.[9] In sharp contrast, the interpretation being

advanced by the Commission here did not arise until after the present controversy began. The third case cited by the Commission, *E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 54, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977), is also distinguishable. There, the Supreme Court held that the Fourth Circuit erred in substituting its judgment for that of the Securities Exchange Commission ("SEC") as to the appropriate method for determining value in a merger involving a closed end investment company. The Court noted that the SEC had "long recognized" the method it used, and that it was, "as Congress contemplated, the product of the agency's long and intimate familiarity with the investment company industry." *Id.* at 55, 97 S.Ct. at 2234. This case, on the other hand, presents a narrow legal issue which is readily susceptible to judicial resolution and requires no special expertise of the Commission. In sum, because none of the factors which warrant deference to an agency's position exist in this case, the Court will accord no special weight to the Commission's interpretation of Section 6(b)(1).

The second development which the Commission contends supports its interpretation of Section 6(b)(1) is a statement in the legislative history of a 1976 amendment to

6. The Commission recorded its interpretation of Section 6(b) as a "minute" of an executive session held on October 6, 1975 (Docket Item 80, Ex.C). Although that interpretation preceded the decision on the preliminary injunction motion by a few weeks, the Commission did not inform the Court of it at that time. In addition, the Commission recently published proposed procedures for complying with Section 6(b). 42 Fed.Reg. 54, 304 (1977) (to be codified in 16 C.F.R. Part 1013). In the prefatory comments, the Commission reiterated its view that Section 6(b) applies only when it "actively and publicly discloses information." *Id.*

7. *E. I. duPont de Nemours & Co. v. Collins*, 432 U.S. 46, 54, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

8. *Udall v. Tallman, supra*, 380 U.S. at 16, 85 S.Ct. at 801.

9. In both cases, Congress knew about the administrative interpretations of the statutes in question but had not amended those statutes. The Court viewed such Congressional inaction as indicating approval of the agency's position. *Zemel v. Rusk, supra*, 381 U.S. at 11, 85 S.Ct. 1271; *Udall v. Tallman, supra*, 380 U.S. at 17–18, 85 S.Ct. 792. It is noteworthy that since this Court rejected the Commission's interpretation in its prior decision, Congress has not amended Section 6(b), although that decision has been brought to Congress' attention and other sections of the Consumer Product Safety Act have been amended. *See* Consumer Product Safety Commission Improvements Act of 1976, Pub.L.No. 94–284, 90 Stat. 503; for instances where representatives of the Commission discussed this Court's prior decision before Congressional committees, *see* Docket Item 112, pp. 24–25.

Section 29 of the Act.[10]  Section 29, 15 U.S.C. § 2078, concerns cooperation between the Commission and other federal and state agencies.  The 1976 amendment authorizes the Commission to provide nonconfidential portions of accident and investigation reports to such agencies.  15 U.S.C. § 2078(e).  The amendment further provides:

> No Federal agency or State or local agency or authority may disclose to the public any information contained in a report received by the agency or authority under this subsection unless with respect to such information the Commission has complied with the applicable requirements of section [6(b) of the Act].  *Id.*

The explanation of the amendment to Section 29 contained in the Conference Report includes the following statement:

> The requirement that the Commission comply with section 6(b) prior to another Federal agency's public disclosure of information obtained under the Act is not intended by the conferees *to supersede or conflict with* the requirements of the [FOIA] (5 U.S.C. 552(a)(3) and (a)(6)).  The former relates to public disclosure initiated by the Federal agency while the latter relates to disclosure initiated by a specific request from a member of the public under the [FOIA].

H.R.Rep.No. 1022, 94th Cong., 2d Sess. 27, *reprinted in* [1976] U.S.Code Cong. & Admin.News p. 1029 (emphasis supplied).

Although the statement of the Conference Committee appears consistent with the interpretation espoused by the Commission, it does not present a reliable basis for inferring that four years earlier, when Section 6(b) was enacted, Congress intended to make it inapplicable to disclosures made in response to FOIA requests.  "[T]he views

of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."  *United States v. Price*, 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960), *quoted in United States v. Philadelphia National Bank*, 374 U.S. 321, 348–49, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963).  Similarly, the impact of the Conference Committee's statement is diminished by the failure of Congress to amend Section 6(b) in 1976, when it presumably knew [11] of the prior decision in this case, in which the Court stated:

> "To argue that [Section 6(b)(1)] becomes irrelevant during the pendency of a FOIA demand is to ignore a clear Congressional concern both for the accuracy of the information disseminated and for the damage that an identified manufacturer might suffer.  Congress was aware that FOIA requests for information gathered by the Commission would be forthcoming but, nevertheless, imposed affirmative obligations on the Commission which cannot flippantly be avoided."  *GTE Sylvania Inc. v. Consumer Product Safety Commission, supra*, 404 F.Supp. at 370 (footnote omitted).

Finally, by stating that they did not intend the Section 29 requirement of compliance with Section 6(b) "to supersede or conflict with the requirements of the [FOIA] (5 U.S.C. 552(a)(3) and (a)(6))," the conferees emphasized the need for some sort of accommodation between the different time restraints imposed by Section 6(b) and the FOIA.  Notably, the statement does not make Section 6(b) altogether inapplicable in the face of a FOIA request, as the Commission would do.

The provisions of the FOIA cited by the conferees [12] impose a duty on federal agen-

---

**10.**  Consumer Product Safety Commission Improvements Act of 1976, Pub.L.No. 94–284, § 15, 90 Stat. 510 (amending 15 U.S.C. § 2078 (Supp. III 1973)).

**11.**  *See* note 9 *supra.*

**12.**  Subsection (a)(3) of 5 U.S.C. § 552 provides that each agency, upon request, shall make reasonably described records "promptly available" to the requester.  Subsection (a)(6) re-

quires an agency to determine within ten days (excepting Saturdays, Sundays and legal public holidays) after the receipt of a FOIA request whether to comply with the request and provides for a ten-day extension of that time limit in "unusual circumstances."  Subsection (a)(6) further provides that a requester shall be deemed to have exhausted his administrative remedies if the agency fails to comply with the prescribed time limits.  5 U.S.C. § 552(a)(6)(C).

cies to respond within ten days in most cases, and promptly in any event, to FOIA requests. Section 6(b)(1) provides that at least thirty days prior to disclosing information from which the identity of a manufacturer can be readily ascertained the Commission must, "to the extent practicable, notify" such manufacturer and provide him "with a reasonable opportunity to submit comments to the Commission in regard to such information." 15 U.S.C. § 2055(b)(1). The Commission contends that an "impermissible conflict" exists between the thirty-day notice requirement of Section 6(b) and the ten-day time limit for responses under the FOIA.[13] The Court disagrees, because in 1972 when Congress enacted the Consumer Product Safety Act, the FOIA required only that an agency make records "promptly available" to any person requesting them.[14] The ten-day requirement was not introduced until 1974, when Congress amended the FOIA.[15] Given that Section 6(b) has not been amended since 1972, the differences between the time periods specified in Section 6(b) and the FOIA cannot be used to infer a Congressional intent to limit the application of Section 6(b) to affirmative disclosures. Indeed, such an interpretation completely ignores the legislative history of Section 6(b). *See Pierce & Stevens*

*Chemical Corp. v. Consumer Product Safety Commission*, 439 F.Supp. 247 (W.D.N.Y., 1977).

The Court concludes, therefore, that Section 6(b) applies to all disclosures which are not exempted from compliance by Section 6(b)(2), 15 U.S.C. § 2055(b)(2),[16] and the Commission should attempt to accommodate the time periods of both statutes to the fullest extent practicable.[17]

## II. AMENDMENT TO FOIA EXEMPTION 3

■ Next, the Commission argues that the Court should reconsider and reverse its prior holding that Section 6(b)(1) is a withholding statute within the meaning of Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), because Congress amended that exemption in 1976 with the express intent of overruling the Supreme Court's ruling in *FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), upon which this Court relied in reaching its previous decision. Although the change in the law clearly necessitates reconsideration of the issue, the Court cannot agree with the defendants' position that Exemption 3, as amended, does not exempt material withheld pursuant to Section 6(b)(1).

**13.** Docket Item 81, pp. 17–19.

**14.** Pub.L.No. 90–23, 81 Stat. 54 (1967) (current version at 5 U.S.C. § 552(a)(6)).

**15.** Pub.L.No. 93–502, § 1(c), 88 Stat. 1562 (1974) (codified at 5 U.S.C. § 552(a)(6)).

**16.** The Commission contends that if Section 6(b)(1) applies in this case, it also must apply to thousands of other records, such as consumer complaints and petitions for rulemaking under Section 10 of the Act, 15 U.S.C. § 2059, which are regularly requested under the FOIA. Docket Item 81, pp. 18–19. The Court expresses no opinion on this proposition, except to note, without deciding, that petitions for rulemaking under Section 10 arguably are exempt from the requirements of Section 6(b)(1) as information concerning an administrative proceeding within the meaning of Section 6(b)(2)(B).

**17.** *Cf. Chrysler Corp. v. Schlesinger*, 565 F.2d 1172, at 1193 (C.A. 3, 1977). In the *Chrysler* case, a government agency notified Chrysler that it had received a request under the FOIA for certain documents concerning one of Chrysler's plants. The agency's regulations permitted a contractor to challenge a decision to disclose such information and guaranteed a final decision within thirty days from the date the challenge was filed. *Id.* at 1179 n. 27. Due to the ten-day response time prescribed by the FOIA, the agency, upon deciding to release the information, informed Chrysler that it could not await the results of an administrative appeal and would release the information five working days later. *Id.* at 1180. Chrysler filed suit in a district court to enjoin the disclosure and the Third Circuit held the case was ripe for judicial review despite Chrysler's failure to exhaust its administrative appeal remedy. *Id.* at 1192. Contrary to the Commission's contention (Docket Item 111, p. 5), the Court in *Chrysler* did not "reject[] agency proceedings which would conflict with the mandate of the FOIA time requirements"; rather, the court resolved the conflict in a manner calculated to give effect to the purposes of both the FOIA and the administrative review procedures.

Originally, Exemption 3 of the FOIA provided:

> (b) This section does not apply to matters that are—
>
> \*   \*   \*   \*   \*   \*
>
> (3) specifically exempted from disclosure by statute.

5 U.S.C. § 552(b)(3) (1970) (amended 1976). Congress amended this exemption in 1976 to exclude from the mandatory disclosure provisions of the FOIA, matters that are

> (3) specifically exempted from disclosure by statute . . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.[18]

The Conference Committee, which was responsible for the language of the amendment as finally enacted, explained the purpose of the amendment as follows:

> The conferees intend this language to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which dealt with section 1104 of the Federal Aviation Act of 1958 (49 U.S.C. 1504). Another example of a statute whose terms do not bring it within this exemption is section 1106 of the Social Security Act (42 U.S.C. 1306).[19]

The thrust of the defendants' argument is that Section 6(b)(1) is indistinguishable from the statute involved in *FAA v. Robertson, supra*. Because Congress expressed a clear intent to exclude Section 1104 of the Federal Aviation Act of 1958 (49 U.S.C. § 1504) from Exemption 3, the Commission contends that Section 6(b)(1) of the Consumer Product Safety Act (15 U.S.C. § 2055(b)(1)) must be excluded from the exemption as well.

Section 1104 authorizes the Administrator, upon receipt of a written objection, to withhold information from public disclosure if, in his judgment, disclosure "would adversely affect the interests of [the objecting party] and is not required in the interest of the public." 49 U.S.C. § 1504. By holding that information withheld pursuant to Section 1104 constituted matter "specifically exempted from disclosure by statute" within the meaning of the original Exemption 3, the Supreme Court in *FAA v. Robertson, supra*, made it possible for government officials to avoid the mandatory disclosure provisions of the FOIA on general discretionary grounds such as "in the public interest." Congress reacted by amending Exemption 3 to prevent agencies from avoiding disclosure on such nebulous grounds.[20]

After comparing the two statutes, the Court concludes that Section 6(b)(1) does not afford the Commission the same broad discretion to withhold information that Section 1104 gives to the Administrator of the FAA. Section 6(b)(1) requires the Commission, as a prerequisite to disclosing "information from which the identity of [a] manufacturer or private labeler may be readily ascertained," to "take reasonable steps to assure": (1) that the information is "accurate," (2) that the disclosure is "fair in the circumstances," and (3) that the disclosure is "reasonably related to effectuating the purposes of [the Act]." 15 U.S.C. § 2055(b)(1). The requirement of accuracy most clearly distinguishes Section 6(b)(1) from Section 1104 of the Federal Aviation Act, because "accuracy" is a more definite and objective standard than the "interest of the public." Similarly, the Court considers the fairness criteria in Section 6(b)(1) more

---

**18.** Pub.L.No. 94–409, § 5(b), 90 Stat. 1241 (1976). The amendment passed as a rider to the Government in the Sunshine Act. Note, *The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act*, 76 Colum.L.Rev. 1029, 1041 n. 70 (1976).

**19.** H.R.Rep.No.1441, 94th Cong., 2d Sess. 14, *reprinted in* [1976] U.S.Code Cong. & Admin. News 2250 (Conference Report). The intent to

undo *FAA v. Robertson, supra*, was also evident earlier in the legislative process. *See* H.R. Rep.No.880, Part I, 94th Cong., 2d Sess. 9–10, *reprinted in* [1976] U.S.Code Cong. & Admin. News pp. 2191–92; Note, *supra* note 18, 76 Colum.L.Rev. at 1042–44.

**20.** *See Seymour v. Barabba*, 559 F.2d 806, 807 (C.A.D.C.1977).

susceptible to effective judicial review than the public interest standard of Section 1104.[21]

Having found Section 6(b)(1) distinguishable from the statutes [22] which Congress specifically stated would not be covered by Exemption 3, we now turn to the language of the exemption itself to determine whether Section 6(b)(1) falls within its ambit. The two provisos of Exemption 3 are in the disjunctive. Subpart A exempts from the FOIA matters that are "specifically exempted from disclosure by statute . ., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." Because Section 6(b)(1) affords the Commission some discretion in determining whether to withhold material from the public, it is not the type of mandatory nondisclosure statute described in subpart A of Exemption 3. *See Irons v. Gottschalk*, 179 U.S.App.D.C. 37, 39 n. 3, 548 F.2d 992, 994 n. 3 (1976), *cert. denied* —— U.S. ——, 98 S.Ct. 505, 54 L.Ed.2d 451 (1976). Subpart B exempts matters authorized to be withheld pursuant to one of two distinct types of statutes: (1) those which establish "particular criteria for withholding" and (2) those which "refer[ ] to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see Kruh v. General Services Administration*, 421 F.Supp. 965, 967 n. 4

(E.D.N.Y.1976). The plaintiffs argue that Section 6(b)(1) satisfies both the standards contained in subpart B of Exemption 3. However, because the Court agrees that Section 6(b)(1) establishes particular criteria for withholding, it is unnecessary to decide whether the statute also refers to particular matters to be withheld.

The only guidance which Congress provided concerning the contours of the exemption for statutes establishing particular criteria for withholding is that it does not extend to statutes like the one at issue in *FAA v. Robertson, supra.* The few cases decided since the amendment became effective in March of 1977 have not shed much more light on the matter.[23] It is noteworthy, however, that the only commentator to address the issue has concluded that Section 6(b)(1) would fall within the amended Exemption 3, under the "particular criteria for withholding" rubric. Note, *supra* note 18, 76 Colum.L.Rev. at 1045 n. 100. The legislative histories of Section 6(b)(1) and Exemption 3 support the same conclusion. As the Court stated in its prior decision in this case, Section 6(b)(1) reflects the balance struck between the Commission's need to have complete access to information relevant to its statutory responsibilities and Congress' "concern both for the accuracy of the information disseminated and for the damage that an identified manufacturer

---

21. *See* Note, *supra* note 18, 76 Colum.L.Rev. at 1045 & n. 100.

22. Besides Section 1104 of the Federal Aviation Act of 1958 (49 U.S.C. § 1504), the Conference Report also identified Section 1106 of the Social Security Act (42 U.S.C. § 1306) as a statute whose terms do not bring it within Exemption 3. H.R.Rep.No.1441, 94th Cong., 2d Sess. 14, *reprinted in* [1976] U.S.Code Cong. & Admin. News p. 2250 (Conference Report). Section 1106 of the Social Security Act prohibits disclosure of a wide range of social security information, except as the Secretary of HEW or the Secretary of Labor "may by regulations prescribe." 42 U.S.C. § 1306(a). Thus, Section 1306 vests virtually "unfettered and unguided power" in the Secretary to determine what information to disclose. *Stretch v. Weinberger*, 495 F.2d 639, 640 (C.A.3, 1974). As indicated above, the Commission's discretion under Section 6(b)(1) is much more circumscribed.

23. In a case strikingly similar to this one, a district court judge held that Section 6(b)(1) of the Act "is a statute setting forth particular criteria for withholding information" and, therefore, falls within the ambit of FOIA Exemption 3. *Pierce & Stevens Chemical Corp. v. Consumer Product Safety Commission*, 439 F.Supp. 247, 251–252 (W.D.N.Y.1977). In that case, however, the court relied on *FAA v. Robertson, supra* and this Court's prior decision without discussing the legislative history of the amendment to Exemption 3 and its effect on the continuing validity of those two precedents.

Two other cases decided after the amendment to Exemption 3 became effective concerned Subpart A and the "particular types of matter" standard of Subpart B of the exemption, respectively. *See Seymour v. Barabba*, 559 F.2d 806 (C.A.D.C.1977); *Founding Church of Scientology v. National Security Agency*, 434 F.Supp. 632 (D.D.C.1977).

might suffer." *GTE Sylvania Inc. v. Consumer Product Safety Commission, supra,* 404 F.Supp. 352, 370 & n. 79. Due to the sensitive nature of much of the information the Consumer Product Safety Act authorized the Commission to gather, the House Committee on Interstate and Foreign Commerce reported that it had

> written into section 6 [15 U.S.C. § 2055] of the bill *detailed requirements and limitations relating to the Commission's authority to disclose information* which it acquires in the conduct of its responsibilities under this Act.

H.R.Rep.No.1153, 92d Cong., 2d Sess. 31 (1972) (emphasis supplied). As the emphasized language makes clear, Congress intended Section 6(b)(1) to limit the discretion of the Commission to disclose information submitted to it.

A review of the legislative history of the original version of Exemption 3 led the Third Circuit "to a firm conviction that the absence of [legislatively prescribed] standards to govern broad agency discretion was the chief evil at which Congress aimed." *Stretch v. Weinberger,* 495 F.2d 639, 640–41 & n. 5 (C.A.3, 1974). Nothing in the legislative history of the amendment to Exemption 3 suggests that the intent of Congress has changed.[24] Rather, the amendment overruled *FAA v. Robertson, supra,* in which the Supreme Court, according to Congress, had "misconceive[d] the intent of Exemption 3" by interpreting it to include a statute which granted an agency almost unlimited discretion to withhold documents. *See* H.R.Rep.No.880, 94th Cong., 2d Sess., pt. 1, at 23; *reprinted in* [1976] U.S.Code Cong. & Admin.News p. 2205; *Seymour v. Barabba, supra,* 559 F.2d at 807. Congress did not exclude from the amended Exemption 3 all statutes which give an agency some discretion concerning whether

to disclose certain information. Therefore, the Court concludes that Section 6(b)(1), which requires the Commission to take reasonable steps to assure accuracy, fairness and a statutory purpose before disclosing information which identifies a manufacturer, establishes particular criteria for withholding and falls within Exemption 3 of the FOIA, as amended.

## III. THIRD CIRCUIT'S DECISION IN CHRYSLER v. SCHLESINGER

■ The final legal development which the Commission contends should lead this Court to modify the findings and conclusions made in conjunction with the issuance of the preliminary injunction is the decision of the Third Circuit in *Chrysler Corp. v. Schlesinger,* 565 F.2d 1172 (C.A.3, 1977). In *Chrysler* the court held that "the APA provides a cause of action for enjoining an agency from disclosing submitter-generated information," citing with approval the prior decision in this case. *Id.* at 1190 n. 88.[25] In addition to recognizing a reverse FOIA cause of action, the Third Circuit suggested that in such cases the courts employ the following analytical approach in reviewing an agency's decision to disclose:

> First it should inquire whether any non-disclosure statute or non-disclosure regulation is applicable. If so, the court must conclude that the agency has acted outside the scope of its statutory authority, and should enjoin disclosure. If no non-disclosure statute or regulation applies, the court must then determine under what authority the agency intends to disclose the contested information. If the agency has concluded that the contested information does not fall within any FOIA exemption, thus mandating disclosure, the court must examine whether the agency applied the proper legal standards

---

24. *See generally* Note, *supra* note 18, 76 Colum.L.Rev. at 1041–43. The author concluded that Congress intended to limit the exemption to statutes in which the concern for secrecy emanated from Congress rather than the agency. *Id.* He would assess the particularity of the criteria for withholding information according to their amenability to *de novo* judicial

review, as provided for by the FOIA. *Id.* at 1045.

25. In light of *Chrysler Corp. v. Schlesinger, supra,* the Commission has abandoned its argument that this Court lacks jurisdiction to review the decision to release the records at issue here. Docket Item 118, p. 5.

for the applicability of the FOIA exemptions. * * * Finally, if the agency record does not establish, or insufficiently explains, the basis for the agency's decision, so as not to permit the reviewing court to effectively perform the above analysis, the remedy is not a trial *de novo*, but a remand to the agency for an additional record or explanation for its decision.

*Id.* at 1192 (footnote omitted).

In the case *sub judice*, the Commission concluded that the contested information did not fall within any FOIA exemption. Having already decided that, by virtue of Section 6(b)(1) of the Act, Exemption 3 applies to the accident data the Commission intends to disclose, the Court will bypass the first of the suggested inquiries— "whether any non-disclosure statute or non-disclosure regulation is applicable." [26]  Instead, the Court turns to the Commission's alternative argument that, even if Exemption 3 applies, the Commission has complied with the requirements of Section 6(b)(1).

The decision to grant the plaintiffs' motions for a preliminary injunction was based on the finding that the Commission had not satisfied its duty under Section 6(b)(1) to take reasonable steps to assure (1) that the accident data is "accurate," (2) that disclosure would be "fair in the circumstances," and (3) that disclosure would be "reasonably related to effectuating the purpose of [the Act]." *GTE Sylvania Inc. v. Consumer Product Safety Commission, supra,* 404 F.Supp. at 370–73. The Court expressly held that the Commission's proposals (1) to

release the accident data with a statement pointing out the differing qualities of recordkeeping among the manufacturers and (2) to correct any inaccuracies identified by the manufacturers were insufficient to satisfy the affirmative duties imposed by Section 6(b)(1). *Id.* at 371–72 & n. 81. Nevertheless, the Commission now argues that these steps, together with an offer to release with the data "statements prepared by the manufacturers describing how their subpoenaed data should be viewed," constitute compliance with the three criteria for disclosure.[27]  Not wishing to repeat the analysis in its prior opinion, the Court notes only that the inclusion of such statements by the manufacturers will not facilitate meaningful comparisons of the accident data to determine the relative safety of the various manufacturers' products. Much of the data will remain unverified. The inaccuracies and unfairness introduced by the Commission's failure to clarify ambiguities in the definition of "TV-related accident" in the subpoenas and to seek full compliance with its subpoenas will persist. In short, the Commission still has failed to demonstrate that disclosure is reasonably related to effectuating the purposes of the Act.[28] Accordingly, the Court finds that the Commission has not fulfilled its responsibilities under Section 6(b)(1).

The last step in the analytical framework set forth in *Chrysler Corp. v. Schlesinger, supra,* requires a remand to the agency, "if the agency record does not establish, or insufficiently explains, the basis for the agency's decision, so as not to permit the

---

**26.** At oral argument, the plaintiffs argued that Sections 6(a)(2) and 6(b)(1) of the Consumer Product Safety Act (15 U.S.C. §§ 2055(a)(2) and (b)(1)) and 18 U.S.C. § 1905, which is incorporated in Section 6(a)(2), are "non-disclosure statutes" as that phrase was used in the *Chrysler* opinion. (Transcript ("T. __") 17–19). The Commission disputed the characterization of Section 6(b)(1) as a "non-disclosure statute" and argued that the plaintiffs have not shown that the contested information is protected from disclosure by Section 6(a)(2) and 18 U.S.C. § 1905. (T. 30–31, 38–39). The Court expresses no opinion on these issues.

**27.** Docket Item 81, p. 35. In *Pierce & Stevens Chemical Corp. v. Consumer Product Safety Commission, supra,* 439 F.Supp. at 250 n. 3, the court concluded that the inclusion of a statement by the manufacturer asserting its viewpoint would not dispel the possibility of irreparable harm from disclosure of information like that at issue here.

**28.** The fact that the accident data could be compared profitably on the basis of the presence or absence of safety features or on the basis of type, such as black and white televisions versus color televisions, is irrelevant. The Commission could accomplish that purpose without identifying the manufacturers.

reviewing court to effectively perform the . . . analysis." Seizing upon this language, the Commission argues that a remand is appropriate here, because "the record is unclear, as to whether or not 6–b(1) was considered" in processing the request for the accident reports.[29] The Court disagrees. As noted in the prior opinion,[30] the administrative record in this case supplemented by the affidavit of Constance B. Newman,[31] Vice Chairman of the Commission, and the deposition of Robert L. Northedge,[32] who was the project director of the Commission's investigation of television hazards, provides this Court with an adequate foundation for effective review. Moreover, the Court foresees no benefit which possibly could flow from a remand in the circumstances of this case.

## CONCLUSION

In conclusion, the Commission has presented no new facts which warrant modification of the findings of fact and conclusions of law made in conjunction with the issuance of the preliminary injunction. The Commission has referred to several changes in the law since the Court's prior decision, but none of these affect the validity of the previous conclusions. Specifically, the Court rejects the Commission's interpretation of Section 6(b)(1) as applying to "af-

**29.** T. 30; Docket Item 118, p. 7.

**30.** *GTE Sylvania Inc. v. Consumer Product Safety Commission, supra,* 404 F.Supp. at 368–69 & n. 70.

**31.** Docket Item 27 (C.A. No. 75–112).

**32.** Based on the holding in *Chrysler Corp. v. Schlesinger, supra,* 565 F.2d at 1191, 14 Empl. Prac.Dec. ¶ 7868, at 6311, that judicial review in reverse FOIA cases should be limited to the administrative record and should not involve a trial *de novo,* the Commission now contends that the Court should not consider portions of the Northedge deposition. (T. 43). The argument is without merit. This Court's determinations in the prior opinion concerning the scope of judicial review and the materials to be reviewed comport completely with the principles expressed in the *Chrysler* case. Relying on *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and *Camp v. Pitts,* 411 U.S. 138, 142–

firmative" agency disclosures, but not to disclosures made in response to FOIA requests. Where as in this case, an FOIA request is received for information from which the identity of a manufacturer can be readily ascertained and which is otherwise subject to Section 6(b)(1), the Commission must comply with Section 6(b)(1) before disclosing that information. Furthermore, if the Commission fails to take reasonable steps to assure that the information is accurate and that disclosure will be fair and serve a statutory purpose, the information will be exempt from disclosure under FOIA Exemption 3. The TV-related accident data at issue here is exempt from disclosure, because the Court finds that the Commission still has not complied with Section 6(b). Finally, the Court finds that the disclosure of this information in its present unverified state and in a manner which identifies the manufacturers would result in irreparable harm to the plaintiffs for the reasons set forth in the Court's previous opinion. 404 F.Supp. at 373–74.

Accordingly, the plaintiffs' motion for summary judgment will be granted and a permanent injunction against the public disclosure of the accident data and the computer printout will be entered.

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52, F.R.Civ.P.

43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), the Court decided to supplement the administrative record with the Newman affidavit and Northedge deposition in order to understand the basis for the Commission's decision to disclose the accident data. *GTE Sylvania Inc. v. Consumer Products Safety Commission, supra,* 404 F.Supp. at 367–68. The Third Circuit explicitly recognized the propriety of such a procedure in the *Chrysler* opinion. 565 F.2d at 1192 n. 96. Mr. Northedge occupied a position of responsibility with respect to gathering and processing of the TV-related accident data. The Commission itself produced him as the person best able to explain the data gathering process. The Court concludes therefore, that there is no reason to exclude the Northedge deposition. Moreover, the opinions expressed by Mr. Northedge concerning the misleading nature of the information and the absence of any use for it are merely cumulative, and do not form the basis for the Court's decision.

## JUDGMENT AND PERMANENT INJUNCTION

On the basis of findings of fact and conclusions of law set forth in the Court's opinion of October 23, 1975 (404 F.Supp. 352) and the Court's opinion of this date entered in these cases, it is

ORDERED

1. Summary judgment is hereby entered in favor of the plaintiffs and against the defendants.

2. Defendants' motions to vacate the outstanding preliminary injunction and for summary judgment are denied.

3. The defendants Consumer Product Safety Commission ("Commission"), its members, agents, officers, employees and all other persons in active concert and participation with them are hereby enjoined from disclosing to the public in any manner:

(a) Any data submitted by plaintiffs to the defendant Commission in response to a special order issued May 13, 1974;

(b) Any data submitted by plaintiffs to the Commission in response to a subpoena duces tecum issued by the Commission on July 26, 1974; and

(c) Any report, extraction, computer analysis, or other document or documents purporting to be a summary or compilation of the data previously supplied to the Commission described in sub-paragraphs (a) and (b) above.

4. Provided, however, the Commission is not enjoined hereby from making certain limited disclosures to Underwriters Laboratories, Inc. ("UL"), the entity retained by the Commission to develop safety standards for television receivers under 15 U.S.C. § 2056, upon the following terms and conditions:

(a) UL and those assisting in development of safety standards for television receivers shall be permitted access to computerized summaries of "accident reports" submitted to the Commission in response to the Commission's July 26, 1974 subpoena duces tecum (served on 12 television manufacturers) in a form that does not, directly or indirectly, identify the manufacturer, model or chassis number of any television receiver alleged to have been involved in any "accident" or the number of "accidents" allegedly associated with any particular manufacturer, model or chassis. The computerized summaries shall contain no identifying symbols which will permit identification of "accidents" reported by a single manufacturer.

(b) For the sole purpose of developing safety standards for television receivers and not for public disclosure, the following employees of UL shall be permitted access to all of the "accident reports" and data submitted to the Commission by the 12 television manufacturers: Mr. S. David Hoffman, Mr. John Stevenson, Mr. Steven Coen and Ms. Frances Newell. These four employees of UL will make use of such "accident reports" and data only in connection with the development of safety standards for television receivers and will not disclose the "accident reports" or data nor make any written or oral reports of the contents thereof to any person other than an employee of the Commission. No other written or oral reports will be prepared by these four employees of UL, which will in any way, directly or indirectly, identify the manufacturer, model or chassis number of any television receiver alleged to have been involved in any "accident" or the number of "accidents" allegedly associated with any particular manufacturer, model or chassis.

5. Provided further, however, that the Commission is not enjoined hereby from public disclosure of the "Report on Analysis of TV Accident Data to Consumer Product Safety Commission," dated April 25, 1975 by Robert A. Yereance (the "Yereance Report") so long as that Report or any accompanying information does not in any way, directly or indirectly, identify the manufacturers, model or chassis number of any television receivers alleged to have been involved in any "accidents" allegedly associated with any particular manufacturer, model or chassis.

6. Copies of this permanent injunction shall be furnished to Messrs. Hoffman, Stevenson and Coen, and Ms. Newell, and all

others assisting UL in the development of safety standards for television receivers forthwith.